*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

INTERNATIONAL TENNIS CORPORATION,

        Petitioner-Appellant,

v

CITY OF SOUTHFIELD,

        Respondent-Appellee.

UNPUBLISHED
June 18, 2019

No. 342928
Tax Tribunal
LC No. 15-001366

INTERNATIONAL TENNIS CORPORATION,
doing business as FRANKLIN RACQUET CLUB,

        Petitioner-Appellant,

v

CITY OF SOUTHFIELD

        Respondent-Appellee.

No. 342932
Tax Tribunal
LC No. 15-003129

Before: METER, P.J., and JANSEN and M. J. KELLY, JJ.

PER CURIAM.

These consolidated appeals[1] concern the tax valuation of commercial property located at 29350 Northwestern Highway in Southfield, Michigan. In Docket No. 342928, petitioner, International Tennis Corporation, appeals as of right the Tax Tribunal's final opinion and judgment determining that true cash value (TCV) for the property was $5,400,000 for the 2015 tax year, $5,000,000 for the 2016 tax year, and $4,500,000 for the 2017 tax year. In Docket No.

---

[1] *Int'l Tennis Corp v Southfield*, unpublished order of the Court of Appeals, entered April 5, 2018 (Docket Nos. 342928 and 342932).

342932, petitioner, International Tennis Corporation, doing business as Franklin Racquet Club, appeals as of right the Tax Tribunal's final opinion and judgment determining the TCV for two parcels of personal property owned by petitioner. The tribunal found that the TCV for parcel number 76-99-498-960 (parcel 960) was $41,680 for the 2015 tax year, $41,380 for the 2016 tax year, and $48,020 for the 2017 tax year. For parcel number 76-99-55-498-920 (parcel 920), the tribunal found the TCV was $504,840 for the 2015 tax year, $421,980 for the 2016 tax year, and $485,200 for the 2017 tax year. In Docket No. 342928, we reverse and remand for further proceedings consistent with this opinion. In Docket No. 342932, we affirm in part and reverse in part.

## I. BASIC FACTS

The property at issue contains a tennis and health facility that has been in business for nearly 50 years. The real property is subject to two types of zoning, with 7.168 acres zoned residential and the remaining 2.02 acres zoned commercial. The current commercial enterprise is permitted as a nonconforming use pursuant to a 1975 consent judgment. The property includes 13 indoor tennis courts, a fitness center, a preschool and kindergarten, a gym with a running track, basketball courts, an indoor pool, an outdoor pool, a banquet center, squash and racquetball courts, a rehabilitation center, a spa, a massage room, a martial arts studio, a dance studio, an aerobics room, locker rooms, a cafe, and various other studios for activities like pilates, yoga, and aerobics.

In 2015, petitioner filed a petition with the tribunal contesting the valuation of real property for the 2015 tax year. The appeal was later amended to include the 2016 tax year and the 2017 tax year. Petitioner also filed a petition with the tribunal contesting the valuation of two parcels of personal property located at the real property for the 2015 tax year. The personal property for the Franklin Racquet Club is identified as parcel 920, and the personal property for Eddie's Café inside the club is identified as parcel 960. The personal-property appeal was later amended to include the 2016 tax year and the 2017 tax year. In November 2017, the tribunal held separate hearings: one involving the personal property and the other involving the real property.

At the real-property hearing, petitioner submitted a work file and an appraisal report prepared by its expert, Brian Kirksey, who testified regarding his determinations. Respondent submitted an appraisal report prepared by its expert, Laurence Allen, who also testified regarding his determinations. Following an evidentiary hearing, the tribunal noted that petitioner had the burden of establishing the property's TCV, and recognized that there were three common approaches to valuation: the capitalization-of-income approach, the sales-comparison or market approach, and the cost-less-depreciation approach. See *Meadowlanes Ltd Dividend Housing Ass'n v Holland*, 437 Mich 473, 484-485; 473 NW2d 636 (1991). In its opinion, the tribunal considered but gave no weight or credibility to the sales-comparison approaches developed by the parties. In addition, the tribunal found Allen's use of the income approach was reliable and that it supported his valuation determination; the tribunal did not find credible Kirksey's decision to not develop the income approach to value. With regard to the cost-less-depreciation approach to value, the tribunal found that Allen had supported his analysis with a sufficient level of detail and without the need to reference his work file. In contrast, the tribunal gave no weight to Kirksey's voluminous work file and found that many of Kirksey's determinations in his appraisal

report were conclusory and lacked adequate support. Ultimately, the tribunal determined that the TCV for the property was $5,400,000 for the 2015 tax year, $5,000,000 for the 2016 tax year, and $4,500,000 for the 2017 tax year.

At the personal-property hearing, petitioner presented testimony from its expert appraiser, J. Michael Clarkson, two valuation disclosure reports, and testimony from Jason Troup a facilities and maintenance director at Franklin Racquet Club. Respondent submitted testimony from its tax assessor, Michael Racklyeft, a valuation report, and a number of additional documents in support of its valuation contentions. In its final opinion, the tribunal gave no weight or credibility to petitioner's testimonial and documentary evidence, and it found that petitioner's personal property statements and fixed asset lists—which were submitted by respondent—were the most reliable evidence to determine the personal property's value. Accordingly, the tribunal determined that parcel 960 had a TCV of $41,680 for the 2015 tax year, $41,380 for the 2016 tax year, and $48,020 for the 2017 tax year and that parcel 920 had a TCV of $504,840 for the 2015 tax year, $421,980 for the 2016 tax year, and $485,200 for the 2017 tax year.

Petitioner now appeals both decisions.

## II. STANDARD OF REVIEW

"The standard of review of Tax Tribunal cases is multifaceted." *Briggs Tax Serv, LLC v Detroit Pub Schs*, 485 Mich 69, 75; 780 NW2d 753 (2010). It is also "very limited." *President Inn v Grand Rapids*, 291 Mich App 625, 630; 806 NW2d 342 (2011). "[I]n the absence of fraud," this Court's ability to review a Tax Tribunal decision "is limited to determining whether the tribunal made an error of law or adopted a wrong principle; the factual findings of the tribunal are final, provided that they are supported by competent and substantial evidence." *Antisdale v City of Galesburg*, 420 Mich 265, 277; 362 NW2d 632 (1984). "Substantial evidence must be more than a scintilla of evidence, although it may be substantially less than a preponderance of the evidence." *Leahy v Orion Twp*, 269 Mich App 527, 529-530; 711 NW2d 438 (2006) (quotation marks and citation omitted). "Failure to base a decision on competent, material, and substantial evidence constitutes an error of law requiring reversal." *Meijer, Inc v Midland*, 240 Mich App 1, 5; 610 NW2d 242 (2000).

## III. DOCKET NO. 342928: REAL PROPERTY

Petitioner argues that the trial court erred when it determined the TCV of the subject real property. In general terms, petitioner contends that the tribunal's decision is "inherently flawed" because the tribunal (1) relied on erroneous statements of fact, (2) abused its discretion when applying the law, and (3) cited or adopted "misstated, incorrect or unsupported/unsupportable assumptions regarding appraisal principles."

Petitioner first takes issue with the tribunal's treatment of Kirksey's appraisal report, supporting work file, and testimony. Petitioner contends that the tribunal erred by

"fundamentally disregard[ing]" Kirksey's extensive analysis of the property and the supporting work file "based upon a carrying over" of the tribunal's "apparent 'dislike' of the petitioner."[2] Petitioner's argument is, essentially, that the tribunal erred by not finding Kirksey's analysis persuasive. Petitioner details at length Kirksey's qualifications, touts the volume of Kirksey's work file—especially in comparison to the non-existent work file from respondent's appraiser— and praises Kirksey's ethics while disparaging the ethics of respondent's appraiser. Petitioner asserts that the basis for the tribunal's decision to disregard Kirksey's work file was that Kirksey did not have "an identic or photographic memory of the entirety of the more than 1200 pages of work papers." Petitioner's argument ignores, however, that "this Court will not assess witness credibility" or "the weight given to the evidence," which is within the discretion of the Tax Tribunal. *President Inns Props*, 291 Mich App at 633. Instead, this Court defers to credibility determinations made by the tribunal. *Id*. Here, the tribunal fully supported its reasons for finding that Kirksey was not credible and that his work file should be given no weight. One of those reasons was, as pointed out by petitioner, that Kirksey lacked the ability to recall and retrieve specific elements from the work file to support his analysis of value. Although petitioner urges this Court to evaluate the evidence and determine that this is an inadequate reason for discrediting Kirksey's testimony, we are not free to do so and must instead defer to the tribunal's credibility determination, which is based on the evidence before the tribunal.[3] Additionally, we note that the tribunal did not merely disregard the work file and Kirksey's conclusions because of his lack of recall. Instead, the tribunal found that despite the voluminous work file, Kirksey's conclusions were not adequately supported by "actual market supported evidence." Accordingly, as petitioner's claim of error on this point is based on nothing more than a challenge to the tribunal's credibility determination, this claim of error is without merit.

---

[2] Petitioner offers no citation to the record to support its assertion that the tribunal "disliked" it. And in our review of the record we have not discovered any basis for this allegation. In its reply brief, petitioner asserts that it did not make or imply that the tribunal was biased with the above comment. Rather, petitioner contends that its argument should be understood to be that the tribunal was fundamentally ignorant of industry standards and the requirements mandated in the preparation of appraisals. Petitioner then discusses at length why the tribunal judge is, essentially, without the "training to intelligently criticize [Michigan Appraisal Institute (MAI)] designated appraisers or determine their credibility." We, however, note that as a member of the Tax Tribunal, the judge presiding over these consolidated cases, is, in fact required to make credibility determinations regarding the witnesses that appear at the hearings notwithstanding that he may lack the extensive training, education, and certifications as the expert witnesses that appear before him. Moreover, we are unaware of any law that requires the factfinder in judicial proceedings to first be an expert in a given field before that factfinder may weigh the evidence offered by an expert witness and evaluate that witness's credibility. Thus, we reject outright petitioner's outlandish claim that a tribunal judge must possess specific training in order to meaningfully evaluate testimony from a MAI designated appraiser.

[3] Again, we reject petitioner's baseless claim that the tribunal judge was personally not qualified to weigh Kirksey's credibility. See note 2, above.

-4-

Petitioner directs this Court to a number of additional "factors" which allegedly show that the tribunal's decision "was in violation of logic and reason."[4] First, petitioner states:

> The Tribunal did not question the fact that the property was being utilized in its highest and best use; and in its rejection of petitioner's analysis that demonstrated an absence of comparable properties or sales, while accepting respondent's income approach to valuation equate the longevity of petitioner's business history with petitioner's demonstrable inability to continue with an uncompetitive, outdate business model in a facility that was badly in need of extensive and expensive repairs that added to it unmarketability[.]

In the above statement, petitioner appears to be challenging the tribunal's decision to afford weight to Allen's use of the income approach to valuation and to reject Kirksey's analysis that there was an absence of comparable properties or sales. Much like petitioner's argument regarding the weight and credibility of Kirksey's work file, this argument is based on petitioner's disagreement with the tribunal's credibility determination. And, besides suggesting that the tribunal was wrong to make those findings, petitioner does not explain how the tribunal's decision in this regard constitutes an error of law or the adoption of a wrong legal principal, nor does he offer any citation to the record to support a determination that the tribunal's factual findings in this regard are not supported by competent and substantial evidence. Accordingly, there is no merit to this argument.

Next, petitioner asserts that the tribunal "often confused matters of opinion with fact," and by way of example notes that in footnote 11 of its opinion the tribunal suggested that there was "some impropriety" in the fact that Kirksey's report was signed by Kirksey and another individual. Petitioner also challenges the tribunal's statements in footnote 9 (relating to the highest and best use of the property) and footnote 13 (relating to Kirksey's access to petitioner's financial statements) of its opinion. However, as with the argument above, petitioner only asserts that the tribunal applied a wrong principle or made an error of law when making the challenged statements. Additionally, petitioner does not provide any analysis suggesting that the court's "findings" in the footnotes were not supported by competent and substantial evidence. Accordingly, we discern no error requiring reversal in footnotes 9, 11, and 13 of the tribunal's opinion.

Next, petitioner argues that the tribunal made factual errors when discussing Kirksey's sales-comparison approach to valuation. First, petitioner asserts that the tribunal erred by stating that "sale 2" had a prior sale despite that not being a fact included in the record and despite the fact that such information was not a relevant or mandatory detail to include in the appraisal report. Petitioner also challenges the tribunal's decision to credit Allen for including the Lifetime Fitness sale as part of its comparative analysis despite the fact that the facility had not

---

[4] We note that the standard of review requires petitioner to show that the tribunal made an error of law or adopted a wrong legal principal. *Antisdale*, 420 Mich at 277. Thus, the suggestion that we should review whether the decision was in "violation of logic and reason"—although colorfully stated—is not helpful to our review of the issue on appeal.

been sold since it was built in the early 1990s. Yet, the tribunal very clearly stated that it considered but gave no weight to the parties' sales-comparison approaches to value. Thus, regardless of whether these statements constitute factual errors, they are not statements supporting the tribunal's ultimate determination of value so reversal is not warranted.

Petitioner also contends that the tribunal erred by faulting Kirksey for failing to disclose other assignments while ignoring that Allen used—without permission—an appraisal he did of the subject property for a bank from which petitioner had sought financing. Other than state that the court faulted Kirksey for conforming to his ethical requirements while ignoring Allen's alleged failure to do so, petitioner has offered no argument showing that the court's decision amounted to an error of law or was based on the adoption of a wrong principle. Thus, as the tribunal's decision in this aspect is, again, nothing more than a credibility determination, we defer to the tribunal's finding on this point. See *President Inn Props*, 291 Mich App at 633. For the same reason, we reject petitioner's contention that the tribunal erred by discrediting Kirksey's appraisal in part based on typographical errors while only noting that Allen's appraisal had some "typographical boo-boos, so to speak." The weight the tribunal gave to the errors is within its discretion. *Id*. We discern no reversible error on this point.

In sum, petitioner's challenges to the tribunal's decision regarding the real property's TCV for the 2015, 2016, and 2017 tax years is without merit.

Nevertheless, based on our review of the record we must reverse and remand for further proceedings. In its final opinion and judgment, the tribunal considered each of the three approaches to value and determined that the cost approach to value provided the most reliable evidence of market value. The tribunal found that Allen's analysis embodied a meaningful approach without a reference to his work file and that the level of detail was demonstrated with explanation and support for the adjustments to the land sales as well as in the narration for the write-up of each sale. The tribunal additionally found that the comparable sales utilized by Allen were credible and his cost calculations were reliable. The tribunal added that Allen's income analysis lent support to the cost approach to TCV for the subject property. The tribunal determined that "reasoned and reconciled values for the subject property are attainable as Respondent's cost approach provides the most reliable evidence of market value." The tribunal thereafter concluded that the TCV of the real property was $5,400,000 for tax year 2015, $5,000,000 for tax year 2016, and $4,500,000 for tax year 2017. The values for 2015 and 2016 are below the values placed on the assessment roll for these years,[5] but the tribunal found in its final opinion and judgment that "the property was not over-assessed for the tax years at issue." And, even though the tribunal found that respondent's cost approach to value was the most reliable indicator of value for each tax year, the tribunal determined a TCV for each tax year that differed from respondent's determinations of TCV.[6]

---

[5] The assessment roll reflects a TCV of $6,347,840 for tax year 2015, $6,353,900 for tax year 2016, and $3,177,300 for tax year 2017.

[6] Allen determined the TCV of the real property to be $5,360,000 for tax year 2015, $5,020,000 for tax year 2016, and $4,810,000 for tax year 2017.

Thus, although the tribunal conducted a detailed analysis of the evidence presented at the hearing concerning the cost approach to valuation, it made determinations of TCV without facts or calculations to support its determinations. This Court does not demand "overelaboration of detail or particularization of facts," see MCR 2.517(A)(2), but, rather, only needs enough information to understand how the tribunal arrived at its TCV calculation. The tribunal's final opinion and judgment does not contain sufficient information to demonstrate how the tribunal arrived at its TCV calculations.[7] Additionally, the tribunal's finding that the property was not over-assessed is not reconcilable with the tribunal's determinations of TCV that are substantially below the assessed values on the tax rolls. The tribunal failed to make sufficient findings of fact to support its decision regarding the valuation of the real property. Further findings of fact regarding the factors used in calculating the TCV of the real property for the tax years at issue are necessary to enable meaningful appellate review. See *Granader v Southfield Twp*, 145 Mich App 585, 588; 377 NW2d 893 (1985). Thus, under these circumstances, we reverse the tribunal's decision concerning the TCV of the real property and remand to the tribunal for further findings of fact regarding the factors used in calculating the TCV of the real property for the tax years at issue.

## IV. DOCKET NO. 342932: PERSONAL PROPERTY

Petitioner challenges nearly every one of the tribunal's findings of fact in its final opinion and judgment regarding the valuation of the personal property. With respect to the majority of the tribunal's findings of fact at issue, however, petitioner's arguments do not contest the evidentiary support for the findings of fact. Although petitioner includes findings of fact 5 through 9 and 11 through 27 in his argument that there is a "disconnect between the findings of fact and the record for personal property," a review of petitioner's brief reveals that it does not dispute the *evidentiary support* for findings of fact 5-9, 11-18, 20, 25-26, and 27. Based on our review of the record, it is plain that substantial evidence supports the above findings of fact, and given the lack of specific challenge, we need not provide a more detailed analysis.

Because petitioner specifically contests the evidentiary support for finding of facts 19, 21, 22, 23, and 24, we address each in more detail.

First, in finding of fact 19, the tribunal found, in part, that petitioner's appraiser, Clarkson, "admits that none of his adjustments [for wear and tear] are disclosed or analyzed in his report." Petitioner maintains that Clarkson "clearly testified to the manner in which he arrived at and applied those adjustments." However, the tribunal found that the adjustments "were not disclosed or analyzed in the report." And, in response to a question regarding whether he could "direct the Tribunal to anywhere in your appraisal regarding how you applied those adjustments, how you determined the appropriate adjustment to make," Clarkson answered "no" and he agreed that "that was just based on [his] determination." Accordingly, finding of fact 19 was supported by Clarkson's testimony.

---

[7] We note that the tribunal's true cash value determination for tax year 2015 was outside the range of evidence provided by either party. See *President Inn Props*, 291 Mich App at 642.

Second, with respect to finding of fact 21, the tribunal found that "[p]etitioner's appraisal report does not include any extraordinary assumptions or hypothetical conditions." Petitioner maintains that "the record in fact refers to the extraordinary assumption, set forth at the outset of the appraisal report that there are a series of assumptions and limiting conditions, as specifically noted by the Tribunal at [finding of fact] 10." Petitioner's argument implies that assumptions and limiting conditions are the same as extraordinary assumptions or hypothetical conditions, but offers no support for this assertion. Additionally, petitioner failed to provide a citation to the transcript to support its statement that "the record . . . refers to the extraordinary assumption." Given that the tribunal's finding was premised upon an omission from the report, and given that petitioner has failed to provide a citation to the record to support its assertion that the tribunal's finding was erroneous, we conclude that petitioner has failed to demonstrate that the tribunal's factual finding is not supported by the evidence.

Third, regarding findings of fact 22 and 23, the tribunal found that "[p]etitioner's appraisal report does not track or account for personal property acquired between December 21, 2014 and December 31, 2015" and that "[p]etitioner's appraiser states the subject personal property is the same from 2015 to 2016 but that he may have erred in counting 2016 personal property that was not present in 2015." Petitioner asserts that the transcript page cited by the tribunal "reveals exactly the opposite." In context, the following colloquy occurred between respondent's lawyer and Clarkson at the transcript page cite by the tribunal:

Q: If we look at your—your appraisal 1 can you show me any items that were added in the . . . 2016 tax year that were not there in 2015?

A: No.

Q. No. okay. And can you show me any items that were removed from Franklin Racquetball Club after January 1, 2015, but before December 31st, 2015, during the 2015 year?

A. No, I don't believe there were any.

Q. Okay. So that would mean Petitioner did not acquire any property from December 30st, 2014 to December 31st, 2015; correct:

A. No, I didn't say that.

Q. Okay. What's in addition? If they acquire property?

A. Yes.

Q. Okay.

A. I don't have any property that has—that shows that.

Q. In your appraisal report?

A. Right.

Thus, Clarkson's testimony supports the tribunal's finding that Clarkson's appraisal did not track or account for any personal property acquired during 2015. Furthermore, Clarkson testified that exhibit 1 to his appraisal report showed that the same property was present in both the 2015 and 2016 tax years and that he "may have erred in counting property that was there in 2016 and was not there in 2015." Consequently, his testimony supports the tribunal's finding that "he may have erred in counting 2016 personal property that was not present in 2015."

Finally, in finding of fact 24, the tribunal found that petitioner's appraisal report "does not include any maintenance reports or damage reports for the subject property." Petitioner does not precisely challenge the tribunal's factual finding, but argues that this finding is not relevant because "the appraisal more than made up for the absence of any such lists by assessing the condition of each item." However, Clarkson did not assess the condition of each item and the report itself provides no evidence as to the condition of each item. Rather, the appraisal report relies on the conclusion of the condition determined by Clarkson and based entirely on support that is not in the record. Therefore, the tribunal's factual finding is supported by the record.

In sum, we discern no error with regard to the tribunal's factual findings and conclude instead that the tribunal's factual findings are supported by substantial evidence on the record. *Briggs Tax Serv*, 485 Mich at 75.

Petitioner next challenges the tribunal's decision to give petitioner's market approach of valuation and Clarkson's use of eBay's buy-it-now data as a method of valuation "no weight or credibility" in determining the TCV of the subject personal property.

" 'True cash value' is the starting point for determining the taxable value of real and tangible personal property in Michigan." *Detroit Lions, Inc v Dearborn*, 302 Mich App 676, 696; 840 NW2d 168 (2013) (quotation marks, citation, and brackets omitted).

> In general, property must be assessed at 50 percent of its true cash value. "True cash value" is defined in relevant part as "the usual selling price . . . that could be obtained for the property at private sale, and not at auction sale . . . ." True cash value is synonymous with fair market value and refers to the probable price that a willing buyer and a willing seller would arrive at through arm's length negotiation. [*Id*. (quotation marks and citations omitted).]

In *President Inn Props,* 291 Mich App at 631, this Court summarized the Tax Tribunal's role when presented with a property valuation dispute:

> With respect to general valuation principles in the Tax Tribunal, the petitioner has the burden to establish the true cash value of property. MCL 205.737(3); *Great Lakes Div of Nat'l Steel Corp v Ecorse*, 227 Mich App 379, 389; 576 NW2d 667 (1998). The burden of proof encompasses two concepts: "(1) the burden of persuasion, which does not shift during the course of the hearing; and (2) the burden of going forward with the evidence, which may shift to the opposing party." *Jones & Laughlin Steel Corp v City of Warren*, 193 Mich App 348, 354-355; 483 NW2d 416 (1992). Nevertheless, because Tax Tribunal proceedings are de novo in nature, the Tax Tribunal has a duty to make an

independent determination of true cash value. *Great Lakes Div of Nat'l Steel Corp*, 227 Mich App at 409. Thus, even when a petitioner fails to prove by the greater weight of the evidence that the challenged assessment is wrong, the Tax Tribunal may not automatically accept the valuation on the tax rolls. *Id*. at 409. Regardless of the method employed, the Tax Tribunal has the overall duty to determine the most accurate valuation under the individual circumstances of the case. *Meadowlanes Ltd Dividend Housing Ass'n v City of Holland*, 437 Mich 473, 485-486, 502; 473 NW2d 636 (1991).

Here, the tribunal concluded that the valuation evidence presented by Clarkson lacked credibility because it contained omissions, contradictions, and misrepresentations. First, the tribunal noted that Clarkson inspected the property in 2012 and his associate, Keith Martin, inspected the property in 2017, but Martin was not an author to the appraisal report and did not present testimony at the hearing. Next, the tribunal noted that Clarkson relied on information obtained during telephone conversations with individuals who were not referenced in the appraisal and that Clarkson ascribed values to some items without any support or rationalization. The tribunal also found significant that Clarkson's testimony regarding comparisons of items lacked consistency and that support for Clarkson's testimony on this point was not found within the appraisal report. The tribunal found it troubling that Clarkson did not find it necessary to determine whether actual sales of "buy it now" items occurred. The tribunal also noted that Clarkson failed at times to identify true comparables for certain assets rather than valuing a brand new like item and depreciating it. In addition, the tribunal found that Clarkson's conclusory statements regarding comparable adjustments did not result in cogent or consistent analysis concerning the market value for the subject personal property. The tribunal found that Clarkson relied on his experience and judgment for adjustments without any support or analysis within the appraisal report. The tribunal noted that conclusory statements are not the equivalent of summary analysis and that valuation theory must be based on market data. The tribunal concluded that adjustments and assumptions based on experience and judgment are not reasonable or logical in the context of a market based comparative analysis.

Based on the foregoing, it is plain that the tribunal provided a thorough analysis of its reasons for finding petitioner's testimonial and documentary appraisal evidence not credible and for giving no weight or credibility to the evidence in determining the TCV of the subject personal property. This Court does not disturb the tribunal's findings regarding the credibility of the witnesses as it is up to the tribunal to assess the credibility of witnesses who appeared before it. *President Inn Props, LLC*, 291 Mich App at 636. Instead, we must defer to the tribunal's determinations of witness credibility. *Id*. at 633.[8]

---

[8] Petitioner asserts that the tribunal's rejection of the use of eBay buy-it-now data as a valuation method is contrary to the approach taken in *Spartech Polycom v City of St Clair*, unpublished per curiam opinion of the Court of Appeals, issued March 8, 2011 (Docket No. 295334). However, although the use of eBay buy-it-now data was permitted in *Spartech*, *id*. at unpub op 3, its use in that case does not translate to a universal requirement that in all cases at all times such data must be accepted as the appropriate valuation method. See *Great Lakes Div of Nat'l Steel Corp*, 227

Having rejected petitioner's evidence, the tribunal accepted the valuation evidence presented by respondent. Racklyeft, respondent's tax assessor, had reconciled petitioner's PPT statements and applied the State Tax Commission (STC) multiplier tables to the original asset values in determining the TCV of the subject personal property. Yet, the tribunal may not automatically accept the taxing authority's assessment because the tribunal must make an independent determination of TCV. *President Inn Props*, 291 Mich App at 640. In *Detroit Lions*, 302 Mich App at 703-705, this Court concluded that the tribunal committed an error of law with regard to the valuation of personal property because it relied exclusively on the respondents' proposed values and did not conduct an independent evaluation of its own:

> [W]e are compelled to reverse in this case because the [tribunal] committed an error of law by failing to undertake an independent determination of true cash value. Upon finding that "[p]etitioners have not carried their burden of proving that the assessment is excessive," the tribunal simply adopted the personal property values advanced by respondents, at least with respect to those assets owned by the Detroit Lions. . . . .
>
> It is undisputed that the personal property values advanced by respondents were based on the STC multiplier tables. The STC multiplier tables are used by taking the property's historical or original cost by year of acquisition and applying a multiplier to convert the cost to current true cash value. But the STC multiplier tables are merely guides, and do not have the force of law. Respondents' proposed personal property values were incomplete because they were not developed after research and a review of the other traditional methods for determining true cash value.
>
> The tribunal, itself, similarly failed to consider other traditional methods of valuation. Upon finding that petitioners had not carried their burden of proof, the [tribunal] simply adopted the values proposed by respondents (with certain downward adjustments for the assets owned by WCF Land) without making its own, independent determination of true cash value. This constituted error. The tribunal must at least consider the other traditional methods of determining true cash value, and "has the duty to determine the property's true cash value using the approach that most accurately reflects the value of the property." Specifically, the tribunal must "consider multiple approaches to determine . . . true cash value, correlating, reconciling, and weighing the values derived under the various approaches to reach a final estimate of the property's value." There is simply no record evidence that the [tribunal] ever considered any of the other approaches before setting the true cash value of the personal property. Because the tribunal did not consider the other approaches and reconcile the values derived thereunder,

---

Mich App at 389-390 (stating that the tribunal is not bound to accept either party's theory of valuation and has a duty to make an independent determination of TCV). Thus, the fact that the methodology was used in a different case does not mandate that it be used in this case.

it is impossible to discern whether the STC multipliers provided an accurate calculation of the true cash value of the personal property in this case.

We conclude that the tribunal "shirk[ed] its duties" by failing to make an independent determination of the true cash value of the personal property. The tribunal was not entitled to merely adopt the values advanced by respondents, which were derived from the STC multiplier tables, without conducting its own analysis. We accordingly reverse the [tribunal's] decision concerning the true cash value of the personal property and remand to the tribunal. On remand, the [tribunal] shall make an independent determination of the true cash value of the personal property. [Citations omitted.]

Similarly, in the present case, the tribunal committed an error of law by failing to make an independent determination of the TCV of the property and by merely adopting the values advanced by respondent, which were derived from the STC tax multiplier tables, without conducting its own analysis. Consequently, the tribunal's decision concerning the TCV of the personal property is reversed and the matter is remanded to the tribunal to make an independent determination of TCV of the personal property.

## V. CONCLUSION

In Docket No. 349928, we reverse and remand for further proceedings consistent with this opinion. In Docket No. 342932, we affirm the tribunal's findings of fact because they are supported by competent, material, and substantial evidence on the whole record. However, because the tribunal erred by failing to make an independent determination of the personal property's TCV, we reverse and remand for the tribunal to make the required, independent determination.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction. No taxable costs, MCR 7.219(A), as neither party has prevailed in full.

/s/ Patrick M. Meter
/s/ Kathleen Jansen
/s/ Michael J. Kelly

-12-